Troutman Pepper Locke LLP
104 Carnegie Center, Suite 203
Princeton, NJ 08540

troutman.com

**troutman**
**pepper locke**

**Angelo A. Stio III**
D 609.951.4125
angelo.stio@troutman.com

April 16, 2026

Via ECF

Honorable Harvey Bartle III, U.S.D.J.
United States District Court for the
Eastern District of Pennsylvania
16614 U.S. Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

**Re:**  ***Atlas Data Privacy Corp., et al. v. DM Group, Inc.*, No. 1:24-cv-4075**
  ***Atlas Data Privacy Corp., et al. v. Deluxe Corp.*, No. 1:24-cv-04080**
  ***Atlas Data Privacy Corp., et al. v. Innovis Data Solutions, Inc.,* No. 1:24-cv-04176**
  ***Atlas Data Privacy Corp., et al. v. RocketReach LLC*, No. 1:24-cv-04664**
  ***Atlas Data Privacy Corp., et al. v. PropertyRadar, Inc.*, No. 1:24-cv-5600**

Dear Judge Bartle:

This firm represents defendants DM Group, Inc., Deluxe Corp., Innovis Data Solutions, Inc., RocketReach LLC, and PropertyRadar, LLC (the "Troutman Defendants") in the above-referenced matters. We write on behalf of the Troutman Defendants and the additional defendants in the matters identified in footnote one,[1] to respond to Plaintiffs' March 27, 2026 letter

---

[1] The Defendants joining this letter are from the following cases:
- Case No. 24-4037 (We Inform, LLC)
- Case No. 24-4041 (Informatics, LLC)
- Case No. 24-4045 (The People Searchers, LLC)
- Case No. 24-4096 (Delvepoint)
- Case No. 24-4098 (Quantarium Alliance, LLC)
- Case No. 24-4103 (Yardi Systems, Inc.)
- Case No. 24-4141 (Digital Safety Products)
- Case No. 24-4143 (Civil Data Research)
- Case No. 24-4160 (National Data Analytics)
- Case No. 24-4174 (Labels & Lists, Inc.)
- Case No. 24-4178 (Accurate Append, Inc.)
- Case No. 24-4256 (Zillow, Inc., et al.)
- Case No. 24-4261 (Equimine, Inc.)
- Case No. 24-4269 (Thomson Reuters Enterprise Centre GmbH & West Publishing Corporation)
- Case No. 24-4292 (Melissa Data Corp.)
- Case No. 24-4324 (Restoration of America)
- Case No. 24-4345 (i360, LLC)

Troutman Pepper Locke LLP, a Georgia limited liability partnership
Melissa Chuderewicz, Partner-in-Charge, Princeton Office

Honorable Harvey Bartle III, U.S.D.J.
April 16, 2026
Page 2

troutman
pepper locke

proposing next steps for engaging in some discovery while the Court aligns schedules on matters before it and the parties await decisions on the appeal of the facial challenge order pending before the Third Circuit Court of Appeals and the related certified question pending before the New Jersey Supreme Court.

Plaintiffs' letter proposes two discovery items that impose obligations on Defendants to provide information but do not impose obligations on Plaintiffs to do the same.  To the extent limited discovery, if any, is to occur, Defendants request that it be bilateral and not unilateral.

We respond to Plaintiffs' proposal of two discovery items and outline Defendants' counterproposal below.

A. Proposal on Initial Disclosures

Plaintiffs propose that Defendants should serve Rule 26 initial disclosures or amended initial disclosures where prior disclosures were allegedly insufficient.  Plaintiffs claim the initial disclosures of certain Defendants are insufficient because they "did not identify individuals likely to have discoverable information," or "failed to describe relevant documents with reasonable particularity."

Defendants have no issue with the parties serving initial disclosures or amended initial disclosures to address deficiencies.  These deficiencies include Plaintiffs' failure to: (i) identify categories of relevant documents with reasonable particularity as to each Defendant, (ii) provide information on the categories of damages sought and show how those damages will be computed as to each Defendant, and (iii) provide initial disclosures as to each of the individual Plaintiffs that provide the categories of information required under Rule 26(a)(1).

At present, Plaintiffs served essentially the same initial disclosures in every case.  As to the computation of damages, the disclosures simply parrot the language from Daniel's Law and make no attempt to show how damages will be computed as required under Rule 26(a)(1)(A)(iii).  The disclosures also make no attempt to identify any actual harm claimed by any individual Plaintiff or

- Case No. 24-4383 (AccuZip, Inc.)
- Case No. 24-4385 (Synaptix Technology, LLC)
- Case No. 24-4389(Joy Rockwell Enterprises, Inc.)
- Case No. 24-4434 (Emerges.com)
- Case No. 24-5656 (The Alesco Group)
- Case No. 24-5658(Searchbug, Inc.)
- Case No. 24-5775 (Amerilist, Inc.)
- Case No. 24-7324 (US Data Corp.)
- Case No. 24-8075 (Smarty LLC)
- Case No. 24-8451 (Compact Information Systems, LLC, et al.)
- Case No. 24-10600 (Dark Owl, LLC)
- Case No. 24-22013 (Spy Dialer, Inc.)
- Case No. 25-1535 (Innovative Web Solutions, LLC)
- Case No. 25-6863 (REDX LLC)
- Case No. 25-9225 (Freedom Soft 303, LLC)
- Case No. 25-12137 (AGR Marketing)

troutman
pepper locke

any alleged Atlas assignor, and they fail to identify the number of alleged Daniel's Law violations by each Defendant that are known by Plaintiffs, which is relevant to any computation of damages. The disclosures as to the computation of damages state:

> Plaintiffs seek all available damages for violations detailed in the Complaint, including without limitation actual damages, which include both economic and non-economic damages (for example, the value associated with the compromise of each Covered Person's safety or privacy), that are not less than the available liquidated damages under Daniel's Law calculated at "$1,000 for each violation," along with punitive damages, to be determined by the Court, for willful noncompliance as allowed under Daniel's Law. See N.J.S.A. § 56:8-166.1(c)(1)-(2). Plaintiffs also seek reasonable attorneys' fees and other litigation costs incurred and any other preliminary and equitable relief as the Court determines to be appropriate.

> The specific calculation of damages will depend in part on information that can only be obtained through discovery, including, for example, the number of violations based on each instance in which Defendant published, re-published, or otherwise made available each home address and each telephone number subject to a nondisclosure request, including where that information may have been made available on more than one website, in more than one way on a given website, or at multiple points in time. Defendants also reaped unjust profits and enrichment through the sale and/or making available of Covered Persons' data, in addition to not having paid any Covered Person for their data or their choice to refuse and not allow disclosure. Plaintiffs, through discovery, seek information that will be used to calculate damages, and Plaintiffs reserve the right to supplement and/or amend this response through the ongoing course of discovery.

In light of the foregoing, Defendants request that Plaintiffs' discovery proposal be amended to include obligations that require the individual Plaintiffs to serve their own initial disclosures identifying the Rule 26(a)(1) categories of relevant information with respect to each Defendant, and require Atlas to provide amended initial disclosures that address the above deficiencies, including the categories of damages being sought by each alleged Atlas assignor, along with whether actual damages are being claimed, the number of violations presently known and how any damages will be calculated.

B. Proposal on a Meet and Confer

Plaintiffs also propose that the "parties shall meet and confer regarding the status and scope of discovery, including the location of discoverable material (such as email servers, cloud repositories, and databases), as well as the details of such databases that house such material (i.e., structure, tables or other organization)." Defendants do not believe a meet and confer on the status and scope of discovery should proceed at this stage, with the constitutional appeal

troutman
pepper locke

pending and a key question about the statute's meaning being considered by the New Jersey Supreme Court.  Defendants also do not believe a meet and confer on the topics proposed by Atlas  would be productive and is notably one-sided.

Plaintiffs' attempts to engage in discovery on email servers, databases, and cloud repositories, are an attempt to go on a fishing expedition of Defendants' systems and is wholly improper.  *See, e.g., John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008) (quoting Fed.R.Civ.P. 34(a), Advisory Committee Note (2006)) ("Courts should guard against undue intrusiveness resulting from inspecting or testing [electronic information] systems."); *Balboa Threadworks, Inc. v. Stucky*, 2006 U.S. Dist. LEXIS 29265, at *3 (D. Kan. Mar. 24, 2006) ("Courts have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature.").

Plaintiffs' theory in these cases is that Defendants disclosed or otherwise made a covered person's protected information publicly available to a third party more than ten (10) business days after receipt of a nondisclosure request.  Discovery of internal databases that are not publicly available is irrelevant to this issue.  For example, as this Court previously found in its decision on an FCRA preemption motion to dismiss, Daniel's Law does not bar a Defendant from maintaining a covered person's home address and unpublished phone number on an internal database that is necessary to accurately match data to the correct person.  *See Atlas Data Privacy Corp. v. We Inform, LLC*, No. 1:24-cv- 4037, 2025 U.S. Dist. LEXIS 164797, at *16-17 (D.N.J. Aug. 25, 2025).

Simply put, Plaintiffs should not be permitted to take discovery on the details of any databases while the constitutional appeal and related certified question remain pending.

###### C. Defendants' Counterproposal

In light of the foregoing, Defendants propose discovery that involves the parties exchanging letters outlining deficiencies, if any, with initial disclosures, the parties meet and confer as to any deficiencies, and the parties bring any issues to the Court by way of a joint letter filed with regard to each case requesting a case management conference.[2]

- May 15, 2026 – the parties shall exchange letters outlining specific deficiencies with initial disclosures.

- June 16, 2026 – the parties shall respond to the initial disclosure deficiency letters.

- July 16, 2026 – the parties shall meet and confer about the initial disclosures to resolve any issues or address questions about the disclosures.

- July 22, 2026 – the parties shall advise the Court of whether issues related to initial disclosures still exist that require a case management conference.

---

[2] In some cases, the parties have not exchanged initial disclosures due to, among other things, the pendency of pre-answer motions, which may have been resolved as of the date of this letter. As to those cases, Defendants propose that the Court, in its discretion, order said parties to serve initial disclosures within 30 days of the Court's order addressing the issues in this letter.

troutman
pepper locke

Defendants thank the Court for its consideration of this proposal.

Respectfully submitted,

*/s/ Angelo A. Stio III*

Angelo A. Stio III

AAS/llm