Troutman Pepper Locke LLP
104 Carnegie Center, Suite 203
Princeton, NJ 08540

troutman.com

Angelo A. Stio III
Angelo.Stio@troutman.com
609.951.4125

November 17, 2026

**VIA CM/ECF**

Hon. Harvey Bartle, III, U.S.D.J.
United States District Court for the
District of New Jersey (by designation)
c/o United States District Court for
the Eastern District of Pennsylvania
16614 U.S. Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

**Re: *Atlas Data Privacy Corp., et al. v. DM Group Inc.*, Civil Action No. 24-4075**
**Response to Plaintiffs' November 10, 2026 Letter [ECF No. 135]**

Dear Judge Bartle:

We represent Defendant DM Group, Inc. ("DM Group") in the above referenced matter. We write in response to Plaintiffs' November 10, 2026 letter [ECF No. 135] seeking either an order enforcing the Court's September 9, 2026 Discovery Order or an expedited conference (the "Letter").

Plaintiffs mention DM Group briefly in their Letter, stating DM Group advised it of its objections to Plaintiffs' discovery in advance of the response date, and citing DM Group as an example of a Defendant who objected to the number of document requests and declined to respond to requests that were in excess of the number set forth in the Court's September 9, 2026 Discovery Order. *See* Letter at 4, and n. 5. To the extent the Letter seeks relief against DM Group, it should be denied.

1. **Plaintiffs made no attempt to meet and confer before filing the Letter.**

Footnote 5 of the Letter confirms DM Group, along with the defendants in two other matters raised, the issue of Plaintiffs propounding discovery requests in an amount that violated the Court's September 9, 2026 Order well before the response deadline of November 3, 2026. Specifically, DM Group wrote to Plaintiffs on October 14, 2026, outlining the objections and trying to resolve the issue before the November 3, 2026 deadline for responses. Thereafter, counsel for DM Group and Plaintiffs met and conferred on October 19. At that meet and confer, Plaintiffs' counsel advised that they would speak with their clients and team and advise DM Group of their position within a day or two. Plaintiffs responded by letter on Friday, October 30, four days before the

production deadline. In that response, Plaintiffs refused to modify their requests. Thereafter, DM Group proceeded with responding to discovery in the fashion it said it would in its October 14, 2026 letter – i.e., it set forth its specific objections to each request, including to the extent they included impermissible subparts and exceed the maximum number of permitted requests.

Thereafter, rather than meet and confer with DM Group about the production and objections as required under the Court's September 9, 2026 Order, Fed. R. Civ. Pro. 37(a)(1) and Local Civil Rule 37.1(a)(1) and (2), Plaintiffs wrote a letter to the Court, seeking the entry of an Order or an expedited conference. Because Plaintiffs failed to comply with the Federal and Local Rules, as well as this Court's prior Order, their application for the entry of an Order should be rejected.

**2. But for the Subpart Issue, Plaintiffs' disputes are not with DM Group.**

Of the Letter's seven pages, DM Group appears in a single bullet point, which notes that DM Group "refuse[d] even to search for documents responsive to all or part of Request Nos. 17 and 19-30," and in footnote 5. *See* Letter at 4 & n.5. Oddly, Plaintiffs complain about DM Group's response to Requests for Production of Documents, but only attach DM Group's Answers to Interrogatories to the Letter. *See* Letter, Ex. L.

DM Group is not among the Defendants accused of failing to respond, of refusing to produce materials pending an ESI protocol, or of answering interrogatories by reference to unproduced documents. *Id*. at 3, 5–6. Notably, DM Group timely served written responses by the November 3, 2026 deadline, along with a production of documents. Plaintiffs do not contend otherwise.

**3. DM Group's objections were not limited to "counting."**

The Letter frames the dispute as a "subpart issue." But ignores that DM Group's objections were not limited to the "subpart issue". While DM Group did refuse to conduct a search for documents responsive to Request Nos 17-30 on the ground that they went beyond the limitation of thirty (30) requests imposed by the Court in its September 9, 2026 Order, each of DM Group's responses to those Requests also rest on independent, substantive objections that would stand even if every numerical objection were overruled:

- Request No. 17 contains three discrete subpart. First, it seeks documents related to how DM Group "handled or responded to requests by individuals asserting or attempting to assert a privacy and consumer protection right or data subject request." Second, it seeks documents any such requests that DM Group "declined, refused, or did not act upon[.]. Third, it seeks documents "related to the do-not-mail and do-not solicit list and the portal through which it is collected[.]" Not only does Request No. 17 exceed the permissible number of document requests, it is also objectionable such that it is seeking information that is not relevant to any party's claim or defenses such that it seeks information related to nondisclosure requests sent pursuant to a statute or regulation other than Daniel's Law, which is the sole statute at issue in this litigation. It is further objectionable insofar as it seeks personal and confidential information of third parties who have no connection to the litigation (i.e. are not Assignors or Individual Plaintiffs) and have not authorized the disclosure of their personal information to Plaintiffs or their attorneys. DM Group also

troutman pepper locke

objected to this request on the ground that it is unlimited in time and therefore, is not tailored the facts and circumstances of the allegations and claims against DM Group.

- Request No. 19 seeks documents relating to DM Group's knowledge or actions "related to compliance with any federal, state, or foreign privacy or consumer protection law or any state judicial-privacy or address-confidentiality program." Like Request No. 17, it seeks information that is not relevant to the claims and defenses here as it seeks information concerning compliance with statutes and regulations other than Daniel's Law. DM Group also objected to this request on the ground that it is unlimited in time and therefore, is not tailored the facts and circumstances of the allegations and claims against DM Group.

- Request No. 20 seeks documents concerning internal training or education related to "state, federal, or international privacy or consumer protection law, rules, policies, or regulation[.]" This request is objectionable on the group that it is yet another request seeking information concerning statutes or regulations other than the sole statute at issue here, Daniel's Law. DM Group also objected to this request on the ground that it is unlimited in time and therefore, is not tailored the facts and circumstances of the allegations and claims against DM Group.

- Request No. 21 seek documents concerning the parts of DM Group's organization and DM Group's employees and agents. It is objectionable insofar as it seeks information regarding every department and employees unrelated to DM Group's handling of the nondisclosure requests Plaintiffs allegedly sent pursuant to Daniel's Law. DM Group also objected to this request on the ground that it is unlimited in time and therefore, is not tailored the facts and circumstances of the allegations and claims against DM Group.

- Request No. 22 seeks to inspect and copy each "email system, mail server, mail service provider, mailbox, alias, distribution list, shared mailbox, ticketing queue, archive, journal, vault, and backup" which DM Group received or could have received a nondisclosure request. First, this request is objection insofar as it seeks this information untethered to a Daniel's Law-specific nondisclosure request and the nondisclosure requests sent on behalf of the Assignors and Individual Plaintiffs in this litigation. Second, it seeks disclosure of personal and confidential information of third parties who have no connection to the litigation and about whom DM Group is not authorized to disclose. Third, it is overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks to "copy" every DM Group email system, mailbox, archive, and backup in its entirety. DM Group also objected to this request on the ground that it is unlimited in time and therefore, is not tailored the facts and circumstances of the allegations and claims against DM Group.

- Request No. 23 seeks all documents relating to the "configuration, operation, and administration of each email system, mail server, or mail service" used by DM Group where it received or could have received nondisclosure requests[.]" The request is objectional as it is not limited to the systems or servers where the nondisclosure requests at issue in this case were received. DM Group also objected to the request on the ground that it was overly broad, unduly burdensome, and not proportional to the needs of the case

as it seeks highly confidential and proprietary information regarding security, routing, and anti-spam filtering. It is further unreasonably cumulative and duplicative of Request No. 22 which, as noted above, was likewise objectionable. DM Group also objected to this request on the ground that it is unlimited in time and therefore, is not tailored the facts and circumstances of the allegations and claims against DM Group.

- Request No. 24 seeks documents and "data recording" the "receipt, routing, forwarding, filtering, tagging, quarantining, storage, archiving, or deletion of any communication from any Covered Person, Atlas, or AtlasMail[.]" The request is objectionable on a number of grounds including the fact that it seeks information regarding information as to which Plaintiffs are in a better position to identify, such as delivery status notifications, bounce backs, and automated replies they received in response to the nondisclosure requests at issue in this specific litigation. DM Group also objected to this request on the ground that it is unlimited in time and therefore, is not tailored the facts and circumstances of the allegations and claims against DM Group.

- Request No. 25 contains three discrete subparts. The first seeks documents regarding the "retention, deletion, archival, journaling, and backup setting . . . for each email system, mailbox, ticketing queue, archive, journal, vault, or backup" where DM received or could have received nondisclosure request "including without limitation concerning each change to any such setting and its effective date, each litigation-hold or preservation or preservation instruction applied to any such system and the date it was applied[.]" The second subpart seeks documents regarding "each instance in which any communications in such system was deleted, overwritten, purged, or lost[.]" The third subpart seeks documents "concerning each third party that provided email hosting, routing, filtering, security, anti-spam, ticketing, archiving, journaling, or backup service for any such system, including each agreement with it and the configuration [DM Group] maintained with it[.]" This request, including its discrete subparts, is objectionable on the ground that it seeks information regardless of whether it relates to communications having any bearing on the claims and defenses in this matter. It also seeks disclosure of information of confidential and proprietary information regarding the security, routing, and anti-spam filtering of DM Group's systems and its agreements with service providers. DM Group also objected to this request on the ground that it is unlimited in time and therefore, is not tailored the facts and circumstances of the allegations and claims against DM Group. Like other requests, this request is also unreasonably cumulative and duplicative of Request Nos. 22 and 23, which were objectionable as well as discussed above.

- Request No. 26 contains four discrete subparts. First, it seeks documents seeking the source from which DM Group obtained each data element. Second, it seeks documents relating to data elements DM Group obtained from a government body or public record. Third, it seeks documents "which data elements [DM Group] did not receive from any source but instead created, inferred, calculated, estimated, modeled, scored, or assigned." Fourth, it seeks documents showing "the rules, logic, models, match criteria, and confidence thresholds by which any such element was created, inferred, calculated, estimated, modeled, scored, or assigned." Each subpart is overly broad, unduly burdensome and not proportional as it seeks information regarding the sources of data

elements and the methods used to generate data elements which have no bearing on the claims or defenses in this matter. The case involves whether DM Group violated Daniel's Law by disclosing protected information ten-business days after receiving a valid nondisclosure requests; not from whom it received information in the first instance. It is likewise unreasonably cumulative and duplicative of Request Nos. 4 and 5.

- Request No. 27 contains four discrete subparts. The first subpart seeks documents "sufficient to identify each entity within the definition of Defendant that obtains, held, maintained, processed, or disclosed Protected Information." The second subpart seeks documents sufficient "to identify . . . the role each such entity performed and the period during which it performed it." The third subpart seeks documents sufficient to identify the "database, product, service, website, and domain name each such entity owned, licenses, operated, controlled, or hosted, and concerning the transfer or making available of Protected Information between or among any two or more entities within the definition of Defendant." The fourth subpart seeks "records showing each such transfer, its date, the transferring entity, and the receiving entity." This requests, including its subparts, is overly broad and unduly burdensome in that it seeks personal and confidential information belonging to third parties who have no connection to the litigation or the claims and defenses in this matter. The request is also objectionable insofar as the definition of "Defendant" is objectionable in that including attorneys and seeks documents protected by the attorney-client and work product privileges. DM Group also objected to this request on the ground that it is unlimited in time and therefore, is not tailored the facts and circumstances of the allegations and claims against DM Group.

- Request No. 28 contains two discrete subparts. The first discrete subpart seeks documents "to show whether that Home Address or Telephone Number was returned to, displayed to, or otherwise made available to that Person or any other Person." The second discrete subpart seeks documents which "identifies each Person . . . to which the appended file, list, or set of records was delivered[.]" The request is objectionable as it is overly broad and unduly burdensome and not proportionate to the needs of the case because it seeks information related to "each occasion" when a "Home Address or Telephone Number" was "appended, matched, or added" without regard to whether that action in any way involved the "home address" or "unpublished home telephone number" of a "covered person" as defined by Daniel's Law. Therefore, it seeks documents not relevant to the claims and defenses in the matter. DM Group also objected to this request on the ground that it is unlimited in time and therefore, is not tailored the facts and circumstances of the allegations and claims against DM Group.

- Request No. 29 is objectionable insofar as it incorporates phrases that are vague and ambiguous and call for speculation such as "may undermine or conflict with". DM Group also objected on the ground that it is premature and DM Group is still identifying documents which may support its defenses.

- Request No. 30, which seeks documents regarding DM Group's preservation of documents and data, is objectionable because it seeks information protected by the attorney-client privilege and work product doctrine, including the content of any litigation hold notice or

communication with counsel which are not discoverable. DM Group objected to this request on the ground that it is improper "discovery on discovery" absent any showing that DM Group's preservation efforts were deficient.

Given the additional substantive objections to the foregoing requests, striking the numerical objections "in their entirety," as Plaintiffs request, would not resolve DM Group's objections.

**4. Plaintiffs stood on materially similar objections in their own written responses.**

It also is worth noting that Plaintiffs ask the Court to fault Defendants for objections that Atlas Data Privacy Corporation ("Atlas") and each Individual Plaintiff asserted in their own November 3, 2026 responses to Defendants' Coordinated Interrogatories and Coordinated Requests for Production. For example, among other objections, Plaintiffs objected as follows:

- <u>Subpart counting</u>. Atlas and each Individual Plaintiff object to Defendants' Instruction 6 on the ground that it would "convert each Request into multiple interrogatories, which count against the limit on interrogatories in Paragraph 3 of the Court's Order." That is the same kind of numerical objection Plaintiffs now ask the Court to strike.

- <u>Refusals to search</u>. Atlas states that it "will not search for or produce documents" in response to Request Nos. 21 and 22, and for many other requests for Request Nos. 1, 11, and 14 that it "will not otherwise search for or produce documents" beyond a limited set it selected. The Individual Plaintiffs claim they will produce only their own nondisclosure requests and any Defendant responses, and state that they "will not otherwise search for or produce documents" in response to Request Nos. 1, 3, 11, and 18.

- <u>Pointing to Atlas instead of producing</u>. For Request Nos. 4, 5, 10, and 12, the Individual Plaintiffs produce nothing of their own and refer Defendants to Atlas's production. Request No. 4 seeks documents showing that each Plaintiff is a "Covered Person," a threshold element of every claim. Plaintiffs answer only that "Atlas has produced or will produce documents." Atlas, in turn, limits its search to self-selected categories.

- <u>Objections with no response</u>. For Request No. 21, which seeks payments received in settlement of other Daniel's Law claims, the Individual Plaintiffs state only objections. They neither produce documents nor say whether any responsive material is being withheld, the very statement the Letter says Rule 34(b)(2)(C) requires. Letter at 5.

- <u>Conditioning production on search term agreement and protocols</u>. For Request Nos. 2, 3, 5, and 7, Atlas conditions any further production on "reasonable agreed-upon or Court-ordered parameters (*e.g.*, search terms)."

- <u>Answering by reference to future productions</u>. Atlas answers Interrogatory Nos. 3, 5, and 19 by referring to documents it "will produce" or "has agreed to produce," without bates numbers. The Individual Plaintiffs answer Interrogatory Nos. 2, 3, and 19 by pointing to documents that "Atlas is producing" or "will produce." The Letter calls this practice impermissible under Rule 33(d). Letter at 5.

troutman pepper locke

Plaintiffs cannot fairly ask the Court to strike DM Group's objections wholesale while standing on similar objections of their own. DM Group does not ask the Court to resolve these objections now. Plaintiffs' objections, like DM Group's, should be part of a proper meet-and-confer process, and then, if necessary, ruled on as part of a motion to compel based on a fully developed record.

***

For the foregoing reasons, DM Group respectfully requests that the Court deny the Letter's requested relief as to DM Group and direct Plaintiffs to meet and confer in good faith to attempt to resolve issues, prior to seeking the Court's intervention.

Respectfully submitted,

*/s/ Angelo A. Stio III*

Angelo A. Stio III

*Attorneys for Defendant DM Group Inc.*